```
             IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                 *
TRUSTEES OF THE NATIONAL         *
ASBESTOS WORKERS MEDICAL
FUND, et al.,                    *

     Plaintiffs,                 *
v.                                           CIVIL NO.: WDQ-04-291
                                 *
GAMBLE INSULATION CO.,
INC., et al.,                    *

     Defendants.                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

Trustees of the National Asbestos Workers Medical Fund ("NAW Fund")[1] and Trustees of the Local 24 Pension Fund and Trustees of the Local 24 Apprenticeship Fund (the "Local 24 Funds") sued Gamble Insulation Company, Inc. ("Gamble Insulation") and Tony L. Gamble ("Mr. Gamble") for contributions to employee benefit plans under a Collective Bargaining Agreement ("CBA") and damages under the Employee Retirement Income Security Program ("ERISA").[2] Pending is Plaintiffs' motion for summary judgment. For the following reasons the motion will be granted.

---

[1] The Trustees of the NAW Fund and the Defendants have settled the matter regarding the contributions to the medical fund. *See* Opp. Mot. at 1. The remaining claim concerns delinquent payments to the pension funds.

[2] *See* 29 U.S.C. § 1132(g)(2) (2004); 29 U.S.C. § 1145 (2005).

1

I.  Background

The Local 24 Funds are jointly administered trust funds pursuant to the Labor-Management Relations Act ("LMRA")[3] and ERISA employee benefit plans[4] established and maintained for the purpose of providing pension benefits to eligible employees.  Am. Compl. at ¶ 4.  The Local 24 Funds are maintained in accordance with their governing Trust Agreements and administered by a third-party, Carday Associates.  *Id*; Mot. Summ. J. at 1-2. Plaintiffs are the Trustees of the Local 24 Funds and administer the Funds for the benefit of the participants, which include asbestos workers.  *Id*. at ¶ 5.  Contributions to the Local 24 Funds are made by insulation contractors who are signatories to the CBA.  *Id.* at ¶ 4.; Mot. Summ. J. at 2.  The CBA is entitled the "Joint Trade Agreement with International Association of Heat and Frost Insulators and Asbestos Workers Local #24 Baltimore-Washington and Insulation Contractors' Association of Washington, D.C., Inc. and Vicinity and All Contractors who Become Signatory to this Agreement" ("Joint Trade Agreement").  *See* Mot. Summ. J. Ex. A3.

Mr. Gamble has been a contractor or subcontractor in the insulation industry since 1998.  Am. Compl. at ¶ 6; Gamble Dep. at 7-8.  Mr. Gamble is the owner and president of Gamble

---

[3] *See* 29 U.S.C. § 186(c) (2005).

[4] *See* 29 U.S.C. § 1002(3) (2005).

2

Insulation, which was incorporated in January 2002.  *Id*. at ¶ 7; Gamble Dep. at 5-7.  Prior to Gamble Insulation's incorporation, Mr. Gamble was the sole proprietor of Gamble Insulation Company.  Opp. Mot. at 12.  Mr. Gamble and Gamble Insulation are "employers" subject to the LMRA and ERISA.[5]  Am. Compl. at ¶ 7.

Mr. Gamble signed the Joint Trade Agreement effective October 1, 1997 through September 30, 2000.  *See* Mot. Summ. J. Ex. A7.  Article II of the Joint Trade Agreement states that an "Employee is anyone working as an Asbestos Worker under the jurisdiction of Local Union No. 24, and that the provisions of this Agreement shall be binding upon the Employers...."  *Id*.  Article XXV of the Joint Trade Agreement states that the Agreement will be automatically renewed for one year terms after September 30, 2000 until either party gives written notice to the other party of its intention to terminate the Agreement.  *Id*.  Mr. Gamble agreed to be bound by the terms of the Joint Trade Agreement by signing the CBA and a short-form agreement.  *See* Mot. Summ. J. Ex. A6.  Mr. Gamble denies signing the Joint Trade Agreement effective October 1, 2000 through September 30, 2003, although he admits that he was operating under the CBA for that time period.  Gamble Dep. at 68.  Mr. Gamble never provided written notice that he was terminating his participation under

---

[5] *See* 29 U.S.C. §§ 142, *et seq.*; 29 U.S.C. §§ 1002, *et seq.*; 29 U.S.C. § 1001(a).

the Joint Trade Agreement.[6]  Mr. Gamble also signed two Participation Agreements, dated December 2, 1999 and February 21, 2003, agreeing to contribute to the Local 24 Funds.  *See* Mot. Summ. J. Exs. A2 and A4.

Signatories to the Joint Trade Agreement make contributions to the Local 24 Funds on a self-reporting basis, although the Funds reserve the right to audit an employer's wage and payroll records to ensure that an employer is correctly reporting and paying the contribution amounts owed.  *See* Mot. Summ J. at 2; Article X of Joint Trade Agreement.  Gamble Insulation's records were audited for the period January 1, 2001 through April 30, 2003.  *Id*. at 5.  Additional records were reviewed for the period January 2004 through October 2004.  *Id*. at 6.  The audit and review of additional records revealed delinquent contributions by Mr. Gamble and Gamble Insulation for union and non-union employees.  *Id*. at 5-6.

The Trustees of the Local 24 Funds brought this action seeking payment of unpaid contributions, interest, liquidated damages, audit costs, and attorneys fees and costs from Mr. Gamble and Gamble Insulation.

---

[6] Gamble signed a signature page that appears to be for the 2000-2003 Joint Trade Agreement, attached at Mot. Summ. J. Ex. A1.  Even if this signature page did not accompany the Joint Trade Agreement, Gamble never provided written notice of termination, thus he is bound by the Agreement per Article XXV.

4

II.  Analysis

A.  Plaintiffs' Motion for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248. Thus, "the judge must ask... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  A mere "scintilla" of evidence is not sufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

5

1.  Enforcement of Pension Fund Contributions Under ERISA

ERISA provides for the enforcement of contributions to multi-employer pension plans under the terms of a collectively bargained agreement.  Section 515 of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.  29 U.S.C. § 1145.

Section 515 creates a federal right of action for multi-employer plans to enforce, as written, the contribution requirements found in collective bargaining agreements.  *Bakery and Confectionery Union and Industry International Pension Fund v. Ralph's Grocery Company*, 118 F.3d 1018, 1021 (4th Cir. 1997).  Section 515 provides multi-employer plans with the statutory authority to hold employers and unions to the literal terms of a written contract.  *Id*.  The intent of the parties is immaterial when the contractual language is clear and unambiguous.  *Id*.

An employer's contribution obligation to a multi-employer plan usually arises through a collective bargaining agreement agreed to by the employer and the union.  *Id*.  The multi-employer plan is a third-party beneficiary of the collective bargaining agreement.  *Id*.  As a third-party beneficiary, the multi-employer plan can enforce the terms of the contract that inure to its benefit.  *Id*.  The multi-employer plan is also subject to

6

defenses that the promisor can assert against the original party to the contract. *Id*. *But see Bakery and Confectionery Union and Industry International Pension Fund v. New World Pasta Company*, 309 F. Supp. 2d 716, 724 (D. Md. 2004)(a multi-employer plan can enforce the contribution requirements of a written document "and is not subject to the understandings or defenses available to the original parties").

(a) Validity of the Joint Trade Agreement

There is no dispute that the Joint Trade Agreement is the CBA that gives rise to a signatory employer's duty to contribute to the Local 24 Funds. The parties agree that Mr. Gamble signed the Joint Trade Agreement for the period effective October 1, 1997 through September 30, 2000. Although there is uncertainty whether Mr. Gamble signed the Joint Trade Agreement for the period October 1, 2000 through September 30, 2003, Mr. Gamble testified at his deposition that he was operating under the CBA from 2000-2003. Furthermore, Mr. Gamble has never exercised his right to terminate his participation under the CBA by providing written notice of his intention to withdraw from the agreement. Accordingly, Mr. Gamble and Gamble Insulation were bound by the automatic renewal provisions set forth in Article XXV of the CBA. *Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Systems General Contracting, Inc.*, 724 F.

Supp. 385, 387 (D. Md. 1989). Mr. Gamble also signed a Participation Agreement on February 21, 2003 agreeing to contribute to the Local 24 Funds, which is further evidence of his intent to be bound to the CBA and his obligations as an employer.

Article X of the CBA provides the terms for contributions to the Local 24 Funds based upon hours worked by all employees, except "1A Apprentices" (who are not relevant to this action). Local 24 Funds received contribution reports and payments from Gamble Insulation in 2000, 2001, 2002, and until May 2003. *See* Declaration of Gail Hill, Accounting Manager for Carday Associates, at ¶ 3. The contractual language of the CBA and the payments made by Gamble Insulation show an intent to the bound by the terms of the CBA. The Joint Trade Agreement is a valid CBA that is enforceable under ERISA by the Trustees.

(b) Oral Representations to Mr. Gamble

There is no dispute that certain payments have not been made by Gamble Insulation to the Local 24 Funds; however, Mr. Gamble argues that statements made to him by a union representative constitute fraud in the execution, which relieves him of any continuing contractual duties under the CBA. Courts have recognized fraud in the execution as a defense to an employer's obligation to make ERISA contributions when a party was deceived

8

into entering the contract and did not know the nature of what he was signing. *Iron Workers' Local No. 25 Pension Fund v. Allied Fence and Security Systems, Inc.*, 922 F. Supp. 1250, 1256 (E.D. Mich. 1996). A defense of fraud in the execution requires the employer to establish excusable ignorance of the contents of the written signing. *Id*. at 1257. On the other hand, fraud in the inducement is when a party knows what it is signing, but its assent is induced by fraud, which is not a valid defense to a claim under ERISA. *Laborers' Pension Fund v. A&C Environmental, Inc.*, 301 F.3d 768, 779 (7th Cir. 2002).

Although Mr. Gamble has raised the defense of fraud in the execution, the defense is more accurately stated fraud in the inducement. Mr. Gamble was aware that he was signing a CBA, but instead based his assent on representations from a union representative, Alan Stortzum, that Gamble Insulation would not have to make pension contributions for a period of five to six months. Opp. Mot. at 9-10. Courts have denied the defense of fraud in the inducement in ERISA actions for delinquent contributions. *See Southern California Retail Clerks Union and Food Employers Joint Pension Trust Fund v. Bjorklund*, 728 F.2d 1262, 1266 (9th Cir. 1984)(false statements by union official at the time of CBA signing were not a valid defense to ERISA claim); *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774-775 (9th Cir. 1986)(false assurances by a union official could not

<006 /91-WDQ Document 68 Filed 01/04/06 Page 10 of 13-->

give rise to a fraud in the execution defense); *Willis Hope White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997)(ERISA does not recognize oral modifications to ERISA plans).

Mr. Gamble also argues that he did not understand the CBA that he signed.  Mr. Gamble first signed the Joint Trade Agreement, Participation Agreement, and short-form agreement in 1999.  Excusable ignorance exists when there is no reasonable opportunity to obtain knowledge about the terms of a contract. *Trustees of the Washington Area Carpenters' Pension and Retirement Fund v. Systems General Contracting, Inc.*, 724 F. Supp. 385, 387 (D. Md. 1989).  Mr. Gamble has had several years to review and understand the CBA, which is evident from the partial contributions he did make and the audit he consented to at the request of the Trustees.  As a result, Mr. Gamble's defenses of fraud in the execution and in the inducement fail.

(c) Joint Trade Agreement Covers "All" Employees

Mr. Gamble contends that he was unaware that he was required to make contributions to the Local 24 Funds for union and non-union employees.  ERISA does not require employers to make contributions for non-union members; however, ERISA will enforce contributions for employees covered in a collective bargaining agreement or any other agreement.  *Bevona v. Galbreath-Ruffin*

*Corporation*, 690 F. Supp. 234, 239 (S.D.N.Y. 1988). In this action, the Joint Trade Agreement defines an employee as anyone working as an asbestos worker under the jurisdiction of Local Union No. 24. Clear contract language requiring contributions for union and non-union employees will be enforced. *Clark v. A.A. Ryan, Jr.*, 818 F.2d 1102, 1105-1106 (4th Cir. 1987). Under the Joint Trade Agreement, Mr. Gamble and Gamble Insulation are required to make contributions for all employees under the jurisdiction of Local Union No. 24, whether the employees are union or non-union workers.

2. Remedies Under ERISA

Section 1132(g)(2) of ERISA provides the remedies available to a fiduciary on behalf of a plan to enforce Section 1145. The court shall award:

>     (A) the unpaid contributions,
>     (B) interest on the unpaid contributions,
>     (C) an amount equal to the greater of -
>         (i) interest on the unpaid contributions, or
>         (ii) liquidated damages provided for under
> the plan in an amount not in excess of 20 percent (or
> such higher percentage as may be permitted under
> Federal or State law) of the amount determined by the
> court under subparagraph (A),
>     (D) reasonable attorney's fees and costs of the
> action, to be paid by the defendant, and
>     (E) such other legal or equitable relief as the
> court deems appropriate.  29 U.S.C. § 1132(g)(2).

These remedies are available to the Trustees of the Local 24 Funds. *Trustees of the Glaziers Local 963 Pension v. Walkers and*

*Laberge Company, Inc.*, 619 F. Supp. 1402, 1403 (D. Md. 1985); *Bakery and Confectionery Union and Industry International Pension Fund v. New World Pasta Company*, 309 F. Supp. 2d 716, 731 (D. Md. 2004).

(a)   Calculation of Damages

Defendants dispute the damage calculations generated by the Trustees, baldly arguing that the audit amounts were inflated, revised, and authored by more than one individual.  None of these arguments creates a genuine dispute of material fact.  The Defendants should have made contributions to the Local 24 Funds, which they did not do in violation of ERISA.  Accordingly, damages will be awarded to the Trustees in the amount of $1,355.09 in delinquent contributions owed up to January 2002, plus interest at the rate of 1.5% per month unpaid until entry of this Court's order; $85,772.03 in delinquent contributions and interest owed up to March 2005, plus interest at the rate of 1.5% per month unpaid until entry of this Court's order; $4,955.00 for the audit costs; and reasonable attorney's fees and costs in an amount to be determined after submission of a properly supported petition in accordance with Local Rule 109.

(b)   Successor Liability

Mr. Gamble argues that any damages assessed against the

12

Defendants should be attributed to Gamble Insulation only, because the corporation assumed all Mr. Gamble's debts when Gamble Insulation was incorporated in January 2002. The general rule in Maryland regarding successor liability is one of non-liability subject to four exceptions, one of which is that the transaction amounts to a consolidation or a merger. *Superior Bank v. Tandem National Mortgage, Inc.*, 197 F. Supp. 2d 298, 313 (D. Md. 2000). The Trustees contend that Gamble Insulation is properly liable, as a successor corporation, for all delinquent contributions incurred by Mr. Gamble prior to January 2002. As there is no dispute, Gamble Insulation alone will be held liable for all of the damages assessed against the Defendants.

CONCLUSION

For the reasons discussed above, Plaintiffs' motion for summary judgment will be granted.

January 4, 2006                                   /s/
Date                                         William D. Quarles, Jr.
                                             United States District Judge