```
           IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                   *
TRUSTEES OF THE NATIONAL           *
ASBESTOS WORKERS MEDICAL           *
FUND, et al.,                      *
                                   *
          Plaintiffs,              *    CIVIL NO.: WDQ-04-291
                                   *
                                   *
                                   *
                                   *
v.                                 *
GAMBLE INSULATION COMPANY          *
INC., et al.,                      *
                                   *
          Defendants.              *
*   *   *   *   *   *   *   *   *   *   *   *   *
```

MEMORANDUM OPINION AND ORDER

On February 3, 2004, Trustees of the National Asbestos Workers Medical Fund ("National Fund") and Trustees of the Local 24 Pension Fund and Trustees of the Local 24 Apprenticeship Fund ("Local 24 Funds") sued Gamble Insulation Company, Inc. ("Gamble Insulation") and Tony L. Gamble for contributions to employee benefit plans under a Collective Bargaining Agreement and damages under the Employee Retirement Income Security Program ("ERISA").[1]

In a Memorandum Opinion dated January 4, 2006, the Court granted the Local 24 Funds' motion for summary judgment. *See* 1/4/06 Mem. Op.[2]  The Court awarded the Local 24 Funds $87,127.12 in delinquent contributions, plus interest, $4,955 in auditing

---

[1] *See* 29 U.S.C. § 1132(g)(2) (2006); 29 U.S.C. § 1145 (2006).

[2] The Defendants and the National Fund settled before the filing of the summary judgment motion.

1

costs and reasonable attorneys' fees and costs.[3]  *See* 29 U.S.C. § 1132(g)(2) (2006).

Initially, the Local 24 Funds were represented by Thomas MacEarlen, Esq., of the Law Office of Thomas MacEarlen, and the National Fund was represented by O'Donoghue & O'Donoghue, LLP ("O'Donoghue"), a District of Columbia law firm.  After the National Fund settled, O'Donoghue became counsel for the Local 24 Funds.

On February 22, 2006, the Local 24 Funds submitted a petition for attorneys' fees and non-taxable expenses[4].  In their motion, the Local 24 Funds included fees for work O'Donoghue billed to the National Fund relating to the filing of the Complaint and discovery.  *See* Mot. Atty's Fees at 5.  Because these matters benefitted all of the plaintiffs, Local 24 Funds were responsible for a proportionate share of these costs.  *See* Second Gilligan Decl. at ¶3[5].  The Plaintiffs, however, failed to disclose their fee arrangement and the Court ordered them to submit a supplemental petition reflecting their proportionate share of fees relating to the Complaint and discovery.  *See* 3/38/06 Order.

On April 17, 2006, the Local 24 Funds submitted a supplemental petition which reflects that the fee arrangement

---

[3] The Court found Gamble Insulation Company, Inc. solely liable for these costs.

[4] The Local 24 Funds also filed a Bill of Costs seeking $1,316.42.

[5] Charles Gilligan, Esq., an O'Donoghue partner, is the responsible partner for this matter.

2

between the National Fund and the Local 24 Funds was a 50%-50% arrangement. *See* Third Gilligan Decl. at ¶4.  The Local 24 Funds, therefore, amended their award request to reflect this fee arrangement.

Pending are the Plaintiffs' Supplemental Petiton for Attorneys' Fees and Non-Taxable Expenses and Bill of Costs.  For the following reasons, the Plaintiffs' Supplemental Petition for Attorneys' Fees and Non-Taxable Expenses and Bill of Costs will be granted.[6]

ANALYSIS

Having determined that an award of attorneys' fees is appropriate, the Court must consider what amount of fees would be reasonable.  *Cox. v. Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 481, 484 (E.D. Va. 2002).  This lodestar figure is calculated by multiplying the reasonable number of hours worked by an appropriate hourly rate.  *Id.* (*citing Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

Four attorneys and two paralegal/law clerks worked on the case for the Local 24 Funds.  *See* Suppl. Pet. Ex. C (billing summary).

Winifred Kao, Esquire, an associate, with over five years ERISA litigation experience, worked 222.39 hours[7] on the case

---

[6] The initial motion for attorneys' fees will be denied as moot.

[7] Kao worked .875 hour for "correcting filing error on motion to compel".  As the Local 24 Funds are not entitled to attorneys' fees relating to the Motion to Compel, *see* 3/28/06 Order, the Court deducted this amount from Kao's time.

between May 12, 2004 and May 19, 2005. *See* Suppl. Pet. Ex. C (billing summary); Second Gilligan Decl. at ¶11. Ms. Kao charged between $150-$165 per hour for her efforts. *See* Suppl. Pet. Ex. C (billing summary); Second Gilligan Decl. at ¶¶5,7. The Maryland Rules and Guidelines for Determining Lodestar Attorneys' Fees ("Fees Guidelines") suggest that an attorney with her experience receive between $150 and $225 per hour. App. B (D. Md. 2001).

Keith Bolek, Esquire, a partner, with over eight years ERISA litigation experience, worked 47.25 hours on the case between September 7, 2005 and January 18, 2006. *See* Suppl. Pet. Ex. C (billing summary); Gilligan Second Decl. at ¶10. Mr. Bolek charged between $150-$165 per hour for his efforts. *See* Suppl. Pet. Ex. C (billing summary); Gilligan Second Decl. at ¶¶5,7. The Fees Guidelines suggest that an attorney with his experience receive between $150 and $225 per hour. App. B (D. Md. 2001).

Jennifer Simon, Esquire, an associate, worked 31.25 hours on the case between January 13, 2006 and February 15, 2006. *See* Suppl. Pet. Ex. C (billing summary). Ms. Simon charged between $150-$165 per hour for her efforts. *See* Suppl. Pet. Ex. C (billing summary); Gilligan Second Decl. at ¶¶5,7. The Plaintiffs did not indicate Ms. Simon's level of experience, however, her hourly rate is within the Fees Guidelines for attorneys with less than five years' experience ($135-$170 per hour).

Charles Gilligan, Esquire, a partner, with over twenty years of ERISA litigation experience, worked 5.75 hours on the case

between January 30, 2004 and January 16, 2006. *See* Suppl. Pet. Ex. C (billing summary); Gilligan Second Decl. at ¶9.  Mr. Gilligan charged between $150-$165 per hour for his work. *See* Suppl. Pet. Ex. C (billing summary); Gilligan Second Decl. at ¶¶5,7. The Fees Guidelines suggest that lawyers with his experience bill at a rate of $200 to $275 per hour.  App. B (D. Md. 2001).

The two paralegals/law clerks worked 29.25[8] hours on the case between January 28, 2004 and June 6, 2005. *See* Suppl. Pet. Ex. C(billing summary).  The fees charged for their efforts were between $95 and $100 per hour. *See* Gilligan Second Decl. at ¶¶5,7. The Fees Guidelines suggest that paralegals/law clerks only receive $90 per hour for their work.  App. B (D. Md. 2001).  O'Donoghue suggests that the Court should deviate from the Fees Guidelines because $95-$100 per hour are the prevailing rates for paralegal/law clerk services in the District of Columbia.  This fact alone, however, is insufficient for the Court to deviate from the Fees Guidelines. *See Bd. of Educ. v. I.S.*,358 F. Supp. 2d 462, 471 (D.Md. 2005) (declining to award hourly rates above those recommended by the Local Rules based solely upon differences in Baltimore and District of Columbia rates).Accordingly, the hourly rate for their efforts will be reduced to $90 per hour.

The total bill for O'Donoghue's work is $42,251.12. Although the Defendants contend that this figure is excessive, they did not elaborate on how much time would be appropriate or the

---

[8]The Court deducted .25 hour performed by Teresa Butler on 10/25/05 for work vaguely described as "research".

5

amount of fees that were reasonable for a complex ERISA litigation case.  Because no evidence has been submitted to show that the hours spent on the case or the fees charged were unreasonable and because the requested fees track closely those recommended by the Fees Guidelines, the Court will use the requested fees of $42,251.12 as its lodestar figure.

The lodestar may be adjusted upward or downward based on consideration of the factors identified in *Barber v. Kimbrell's Inc.*[9]  The *Barber* factors are as follows:

> (1) time and labor expended;
> (2) novelty and difficulty of questions raised;
> (3) the skill required to perform the legal services rendered;
> (4) the attorneys' opportunity costs in pressing the litigation;
> (5) the customary fee for like work;
> (6) the attorneys' expectation at the outset of the litigation;
> (7) time limitations imposed by the client or the circumstances of the case;
> (8) amount in controversy and the result obtained;
> (9) the experience, reputation and ability of the attorneys;
> (10) the undesirability of the case within the legal profession;
> (11) the nature and length of the professional relationship between the attorney and client; and
> (12) attorneys' fees awards in similar cases.

*Cox*, 235 F. Supp. 2d at 485.  Having considered these factors, the Court finds no need to adjust the established lodestar.  The Local 24 Funds' non-taxable expenses[10] of $510.60 and taxable costs[11] of

---

[9] 577 F.2d 216, 226-28 (4th Cir. 1978).

[10] Non-taxable expenses are "reasonable out-of-pocket expenses" incurred during litigation.  *See* App. B (D. Md. 2001).

[11] Taxable costs include fees of the clerk, fees for copies of papers and fees for stenographic transcripts necessarily obtained for the case, 28 U.S.C. § 1920(1)(2) and (4)(2006).

$1,316.45, unchallenged by the Defendants, will also be awarded.

## CONCLUSION

For the reasons discussed above, the Local 24 Fund's supplemental petition for attorneys' fees and non-taxable expenses, and bill of costs will be granted.  Gamble Insulation will be ordered to pay $42, 251.12 in attorneys' fees, $510.60 in non-taxable expenses and $1,316.45 in taxable costs to the attorneys for the Local 24 Funds.


July 6, 2006                                    /s/
Date                              William D. Quarles, Jr.
                                  United States District Judge